UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAVOGIA JACKSON,

                           Plaintiff,

            -against-

ANNUCCI, et al.,

                           Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-02008 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Lavogia Jackson ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Anthony J. Annucci ("Annucci"), Donald Venettozzi ("Venettozzi"), Michael Royce ("Royce"), Eric Gutwein ("Gutwein"), Derek Deegan ("Deegan"), Rosita Rossy ("Rossy"),[1] William Rivera ("Rivera"), and Raymond Dahl ("Dahl," and collectively, "Defendants") for violating his constitutional rights while he was incarcerated at Green Haven Correctional Facility ("Green Haven"). (Doc. 40, "Am Compl."). Plaintiff asserts five claims for relief: (1) unspecified Eighth and Fourteenth Amendment violations; (2) deliberate indifference to his medical needs in violation of the Eighth Amendment; (3) conditions of confinement in violation of the Eighth Amendment; (4) deprivation of procedural due process rights in violation of the Fourteenth Amendment; and (5) conspiracy to retaliate against him for engaging in protected activity in violation of the First Amendment. Plaintiff also appears to bring

---

[1] Although Plaintiff spells Rossy's name as "Rossi" throughout the Amended Complaint (*see generally* Am. Compl.), it appears, based on Defendants' briefs and publicly available court filings, that "Rossy" is the correct spelling. (*See generally* Defs. Br., Defs. Reply); *see also Bonie v. Annucci*, No. 20-CV-640, 2020 WL 2489063, at *3 (S.D.N.Y. May 14, 2020); *Matthews v. Barq*, No. 18-CV-855, 2021 WL 1582255, at *1 (N.D.N.Y. Jan. 12, 2021), *adopted by* 2021 WL 1135452 (N.D.N.Y. Mar. 25, 2021).

claims for relief based on violations of New York State Department of Corrections and Community Supervision ("DOCCS") directives and associated regulations.[2]

Plaintiff filed his original Complaint on March 4, 2020. (Doc. 2). On October 29, 2020, Plaintiff sought leave to file an Amended Complaint, and annexed a proposed Amended Complaint to his motion. (Doc. 35). On October 30, 2020, the Court granted Plaintiff's motion for leave to file an Amended Complaint, construed Plaintiff's proposed Amended Complaint as asserting claims against the same Defendants named in Plaintiff's original Complaint, and directed the Clerk of Court to separately docket Plaintiff's Amended Complaint. (Doc. 39).

On December 4, 2020, Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Docs. 43-45). On December 7, 2020, the Court *sua sponte* denied Defendants' motion to dismiss without prejudice to renewal because Defendants failed to first request a pre-motion conference in compliance with Rule 2(C) of this Court's Individual Practice. (Doc. 46). On December 18, 2020, Defendants filed a letter requesting a pre-motion conference in advance of filing a motion to dismiss. (Doc. 48). On December 29, 2020, Plaintiff requested an extension of time to respond to Defendants' already-denied motion to dismiss. (Doc. 50). On December 30, 2020, the Court granted Defendants leave to move to dismiss Plaintiff's Amended Complaint. (Doc. 51).

On January 29, 2021, Defendants re-filed their motion to dismiss. (Doc. 61; Doc. 62, "Defs. Br."). On March 5, 2021, Plaintiff filed three documents in response: (1) a document containing

---

[2] To the extent that Plaintiff brings claims for failure to comply with DOCCS directives or related regulations, those claims are not actionable, and are therefore, dismissed. *See Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at *4 (S.D.N.Y. Mar. 15, 2001) (holding that failure to follow a DOCCS prison regulation "does not give rise to a constitutional violation"); *see also Rasheen v. Adner*, 356 F. Supp. 3d 222, 236 (N.D.N.Y. 2019) ("[A] Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations."); *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) ("[T]he violation of 7 N.Y.C.R.R. § 251-5.1(a) alone would not be enough generally to establish a constitutional claim.").

his "objections" and several exhibits (Doc. 65); (2) a memorandum of law in support of his opposition to Defendants' motion to dismiss (Doc. 66, "Pl. Opp.");[3] and (3) a declaration for entry of a default judgment against Defendants (Doc. 67). On March 22, 2021, Defendants filed their reply memorandum of law in further support of their motion to dismiss and in opposition to Plaintiff's motion for default judgment. (Doc. 70, "Defs. Reply").

For the following reasons, Defendants' motion to dismiss is GRANTED.

## **BACKGROUND**

Plaintiff was an inmate at Green Haven.[4] (Am. Compl. at 1).[5] On September 3, 2019, Rossy (a Sergeant at Green Haven) directed two unidentified male correction officers to "pat frisk" Plaintiff. (*Id.* ¶ 2). At the time of the "pat frisk," Plaintiff was wearing "medically issued" back and knee braces. (*Id.* ¶ 4). Plaintiff's permit for these braces, however, was expired by one day. (*Id.* ¶ 5). Given the permit's expiration, Rossy ordered that the back and knee braces be confiscated and "placed in the H-Block officer's cage until" Plaintiff received a new medical permit. (*Id.* ¶ 6).

On September 10, 2019, Plaintiff received a new medical permit, went to the H-Block, and requested that the back and knee braces be returned to him. (*Id.* ¶¶ 7-8). The braces, however, were

---

[3] Plaintiff, through his opposition brief, purports to move for a default judgment against Defendants. (*See* Pl. Opp. at 4.). First, Plaintiff's motion is incorrectly predicated on Defendants' failure to answer the Amended Complaint. Defendants, obviously, have moved to dismiss the Amended Complaint. Second, a motion for a default judgment must be brought in a separate motion. *Cf. Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021) (denying motion for Rule 11 sanctions made in opposition brief); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-2199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" where plaintiffs requested relief via an opposition to a motion, without filing a notice of motion). Plaintiff's motion for a default judgment is therefore procedurally improper and denied. To the extent possible, the Court will consider Plaintiff's "objections" as opposition to the motion to dismiss.

[4] Plaintiff informed the Court, by letter dated May 16, 2021, that he is now incarcerated in Eastern Correctional Facility. (Doc. 76).

[5] Where Plaintiff does not cite to numbered paragraphs in the Amended Complaint, citations to page numbers in the Amended Complaint correspond to the pagination generated by ECF.

missing. (*Id.*). Plaintiff filed a grievance against Rossy that day for confiscating his braces. (*Id.* ¶ 9).

Nearly a month later, on October 11, 2019, Plaintiff was informed by Deegan (a Lieutenant at Green Haven) that Plaintiff had been randomly selected for drug testing and was ordered to provide a urine sample. (*Id.* ¶¶ 11-12). Plaintiff's urine sample was stored in a refrigerator, where it remained until October 17, 2019, when Dahl (a Correction Officer at Green Haven) removed it to complete the drug test. (*Id.* ¶ 13). Plaintiff's urine sample was tested using the Indiko Plus urinalysis system, which, at the time, was a new drug testing system being used by DOCCS.[6] (*Id.* at 16). Plaintiff's sample tested positive.[7] (*Id.*). Plaintiff was thereafter placed in "keeplock" confinement and charged with violating DOCCS Rule 113.24, which prohibits inmates from using narcotics or controlled substances without a prescription. (*Id.* ¶ 14). That same day, Royce (the Superintendent of Green Haven) was allegedly informed that Plaintiff had been placed in "keeplock" confinement for such violation. (*Id.* at 21).

On October 21, 2019, in advance of his disciplinary hearing, Plaintiff requested six documents: (1) "urinalysis drug testing directive #4937"; (2) "7 NYCRR Chapter V Standards and Procedures for Disciplining Inmates"; (3) "Reasonable Accommodations for Persons with Disabilities"; (4) "the freezer log book for where the plaintiff's sample had been purportedly stored

_____

[6] Plaintiff alleges that the Indiko Plus machine used for his drug test was known to produce unreliable test results. (Am. Compl. at 16). Specifically, in September 2019—before Plaintiff's drug test—Plaintiff alleges that Annucci ordered that sanctions connected to positive test results for suboxone and buprenorphine produced by the Indiko Plus machine be reversed. (*Id.*). And in November 2019, Annucci allegedly issued a statewide memorandum regarding false positive test results produced by the Indiko Plus machine. (*Id.* at 19).

[7] Neither Plaintiff, nor Defendants, identify the drug for which Plaintiff's urine sample allegedly tested positive. But based on the line of questioning directed at the representative for the company that manufactures the Indiko Plus machine, it appears that Plaintiff may have tested positive for marijuana. (Am. Compl. ¶ 32).

. . . [and] all person(s) who had accessed that freezer from [October 11, 2019] – date of collection of [Plaintiff's] sample, until [October 17, 2019] – the date of its removal from that freezer"; (5) "the proficiency reports a study that illustrates how the tester performed on a random blind independent test sample"; and (6) "[Dahl's] certification for th[e] new Indiko Plus urinalysis testing procedure system." (*Id*. ¶¶ 16-17). Plaintiff was provided with documents (1)-(3), but not documents (4)-(6). (*Id*. ¶ 18). He was also provided with a "chain of custody form." (*Id*. ¶ 22).

Plaintiff's disciplinary hearing commenced on October 23, 2019. (*Id*. ¶¶ 20-23). At the hearing, Plaintiff lodged three objections: (1) he was not provided with all the documents he requested (*id*. ¶ 24); (2) Gutwein (the disciplinary hearing officer) "engaged in a loud conversation with several people," including Rivera (a Correction Officer at Green Haven), about the denial of Plaintiff's request for certain documents (*id*. ¶¶ 20-22); and (3) Plaintiff was not given sufficient time to review the documents that he was provided (*id*. ¶ 24). Plaintiff pled not guilty to the charging document. (*Id*.). Gutwein then adjourned Plaintiff's hearing. (*Id*.).

On October 28, 2019, Green Haven "was placed on lockdown." (*Id*. ¶ 25). Plaintiff wrote a letter to Venettozzi (Director of Special Housing Unit, DOCCS) to inform him of the "lockdown," and that Plaintiff's hearing "was to be completed by October 30, 2019." (*Id*.). Plaintiff also included in his letter that, "should anyone seek an extension of time" to conduct the hearing beyond the fourteen-day timeline contemplated by N.Y. Comp. Codes R. & Regs. tit. 7, § 251.1-5.1, "[he] would like a copy of said request [and] the day said extension was granted . . . ." (*Id*.).[8] Plaintiff's letter was not acknowledged. (*Id*.).

---

[8] "The disciplinary hearing or superintendent's hearing must be completed *within 14 days* following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee. Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals." N.Y. Comp. Codes R. & Regs. tit. 7, § 251-5.1(b) (emphasis added).

Plaintiff's disciplinary hearing resumed on November 4, 2019, despite Plaintiff's objection that Gutwein failed to properly notify Plaintiff that the date of his hearing had been extended beyond the fourteen-day timeline contemplated by N.Y. Comp. Codes R. & Regs. tit. 7, § 251.1-5.1(b). (*Id*. ¶ 26). Gutwein, allegedly without explanation, would not give Plaintiff a copy of the authorization that had been obtained to extend the date of Plaintiff's hearing. (*Id*. ¶ 27). Gutwein continued the hearing and called Deegan and Dahl as witnesses. (*Id*. ¶¶ 27, 29-30). In response to Plaintiff's questioning, Dahl testified that the names of the individuals who accessed the refrigerator in which Plaintiff's urine sample had been stored were recorded on the "chain of custody form" that had been given to Plaintiff. (*Id*. ¶ 27). But Dahl allegedly did not provide the names of everyone who had accessed the refrigerator from October 11, 2019 (the date of collection) until October 17, 2019 (the date of removal and testing). (*Id*.). Dahl also testified that he was no longer required to comply with Directive No. 4937,[9] because he was using the new Indiko Plus urinalysis machine. (*Id*.). Deegan testified that he did not personally submit a request to have Plaintiff tested for drugs; rather, the request was randomly generated by a computer. (*Id*. ¶ 29). Deegan did not explain why this information was not provided on the "request for urinalysis test form." (*Id*.). Plaintiff was not satisfied with Dahl and Deegan's responses to his questions. (*Id*. ¶¶ 27, 30). Gutwein denied Plaintiff's request for additional witnesses as redundant and further adjourned the hearing. (*Id*. ¶ 31).

On November 7, 2019, Plaintiff was permitted to question a representative of the company that manufactured the Indiko Plus machine used by DOCCS to test Plaintiff's urine for drugs. (*Id*.

---

[9] DOCCS Directive No. 4937 governs urinalysis testing of incarcerated individuals at DOCCS facilities. *See Taylor v. New York Dep't of Corr. Servs.*, No. 10-CV-140, 2012 WL 913678, at *3 (N.D.N.Y. Feb. 23, 2012), *adopted sub nom. by Taylor v. New York Dep't of Corr.*, No. 10-CV-140, 2012 WL 913564 (N.D.N.Y. Mar. 16, 2012).

¶ 32). Plaintiff asked the representative about testing for [tetrahydrocannabinol]—the psychoactive compound in marijuana. (*Id*.). Gutwein then denied Plaintiff's request to recall Deegan as a witness. (*Id*. ¶ 33). Plaintiff also requested to call Rivera to testify about requesting a "false extension . . . of time" to conduct the disciplinary hearing in violation of N.Y. Comp. Codes R. & Regs. tit. 7, § 251.1-5.1. (*Id*. ¶ 34). Gutwein denied this request as redundant. (*Id*.). He then concluded the hearing by finding Plaintiff guilty of violating DOCCS Rule 113.24 and imposed the following sanctions: pre-hearing "keeplock" confinement for twenty-one days; post-hearing "keeplock" confinement for thirty-nine days; loss of recreation for ninety days; loss of packages for ninety days; loss of commissary for ninety days; loss of phone use for ninety days; loss of property for ninety days; and loss of personal property for ninety days. (*Id*. ¶ 35). Thereafter, Plaintiff was held at the disciplinary hearing office while correction officers confiscated personal property in Plaintiff's cell, including: books, writing instruments, paper, hygiene products, clothing, a bible, family photographs, and eating utensils. (*Id*. ¶ 36).

Plaintiff appealed Gutwein's guilty determination. (*Id*. at 20). On January 8, 2020, Venettozzi reviewed and affirmed this determination; approximately two weeks later, however, on January 22, 2020, Venettozzi reversed his decision. (*Id*. at 19-20). This suit followed.

## **STANDARD OF REVIEW**

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading

requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## **ANALYSIS**

I. Section 1983 Claims

Construing the Amended Complaint liberally, Plaintiff asserts several claims for relief under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). As such, in each permutation of a claim under that law, "a plaintiff must demonstrate: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor.'" *Town & Country Adult*

*Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (quoting *Walker v. Clemson*, No. 11-CV-9623, 2012 WL 2335865, at *3 (S.D.N.Y. June 20, 2012)).

The Court will address the plausibility of Plaintiff's claims for relief *seriatim*.

A. <u>Plaintiff's First Claim for Relief: Eighth and Fourteenth Amendment Violations</u>

With respect to this claim for relief, as a threshold matter, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (noting that supervisory liability requires that the "defendant, through the official's own individual actions, has violated the Constitution" (quoting *Iqbal*, 556 U.S. at 676)); *Greene v. Sampson*, No. 18-CV-6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021). "[T]here is no *respondeat superior* liability under § 1983." *Jamison v. Fischer*, No. 11-CV-4697, 2012 WL 4767173, at *4 (S.D.N.Y. Sept. 27, 2012). Failure to allege a defendant's personal involvement renders a "complaint . . . 'fatally defective' on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (quoting *Black v. United States*, 534 F.2d 524, 527-28 (2d Cir. 1976)). Here, Plaintiff fails to allege personal involvement with respect to all claims for relief against Annucci, Royce, and Venetozzi arising from alleged Eighth Amendment conditions of confinement and Fourteenth Amendment procedural due process violations.

Regarding Annucci, the Court agrees with Defendants that Plaintiff's claims are "solely based on [Annucci's] position as Acting Commissioner of [DOCCS]." (Defs. Br. at 7). According to Plaintiff, in September 2019, Annucci ordered the reversal of guilty determinations that resulted from positive test results for suboxone and buprenorphine produced by the Indiko Plus machine.

10

(Am. Compl. at 16). Plaintiff also alleges that, in November 2019, Annucci issued a statewide memorandum regarding false positive test results produced by the Indiko Plus machine. (*Id*. at 19). As a result, Plaintiff alleges that, due to the "continued use" of the Indiko Plus machine, Annucci "knew" of the risk that Plaintiff would be found guilty based on false positive results. (*Id*. at 17). But that conclusory allegation does not connect Annucci to the specific constitutional violations that Plaintiff alleges. Indeed, Plaintiff does not explain how or whether Annucci's modification of decisions rendered in connection with false positive tests for suboxone and buprenorphine relate to his own positive test for an unknown substance. Rather, Plaintiff's allegations are merely based on Annucci's "'high position of authority' at DOCCS," and Plaintiff's belief that, based on this position, Annucci necessarily had knowledge of and personal involvement in the alleged misconduct. *See Allah v. Annucci*, No. 16-CV-1841, 2018 WL 4571679, at *6 (S.D.N.Y. Sept. 24, 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Such allegations are insufficient to establish Annucci's personal involvement. *See id*.; *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." (internal quotation marks omitted)); *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003) ("'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983." (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987))). Accordingly, all claims for relief against Annucci are dismissed.

As for Royce, Plaintiff alleges that he was notified of Plaintiff's confinement, and that such notification would have indicated that Plaintiff's positive drug test was obtained using the allegedly faulty Indiko Plus machine. (Am. Compl. at 21). But it is well-established that "[m]ere notice of alleged wrongdoing is insufficient to establish a supervisor's or

administrator'[s] personal involvement." *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2008 WL 4276208, at *8 (S.D.N.Y. Sept. 17, 2008); *see also McNair v. Kirby Forensic Psychiatric Ctr.*, No. 09-CV-6660, 2010 WL 4446772, at *13 (S.D.N.Y. Nov. 5, 2010). Without more, Royce cannot be held liable for any alleged constitutional violations. Therefore, all claims for relief against Royce are also dismissed.

With respect to Venettozzi, Plaintiff maintains that by reviewing and affirming Plaintiff's guilty determination, he was made aware of the alleged procedural due process violations at the hearing below, and thus was personally involved. (Am. Compl. at 19-20). But "[c]ourts within this Circuit are split as to whether a prison official who simply denies an inmate's administrative appeal from a disciplinary hearing can be held liable under § 1983." *Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247, at *13 (S.D.N.Y. Mar. 27, 2015). Some courts have held that an appeal officer may be held liable for failure to correct procedural due process violations that occurred at the disciplinary hearing below, *see Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *9 (S.D.N.Y. Jan. 24, 2017); *see also Colon v. Annucci*, 344 F. Supp. 3d 612, 631 (S.D.N.Y. 2018); *McGriff v. Keyser*, No. 17-CV-7307, 2019 WL 6033421, at *8-9 (S.D.N.Y. Nov. 13, 2019), while others have held that "a prison official who denies an inmate's administrative appeal from a disciplinary hearing can be held liable under § 1983 only if the violation complained of was still 'ongoing' at the time of the appeal, such that he or she could have remedied the violation directly," *Jamison*, 2012 WL 4767173, at *4; *see also Ortiz*, 2015 WL 1427247, at *14; *Koehl v. Bernstein*, No. 10-CV-3808, 2011 WL 2436817, at *10 (S.D.N.Y. June 17, 2011), *adopted by* 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011). This Court finds the latter view persuasive, but need not reach a conclusion as to Venettozzi's personal involvement at this juncture, because in any event, the split in guidance entitles Venettozzi to qualified immunity. *See Colon*, 344 F. Supp. 3d at 631

("Venettozzi is entitled to qualified immunity for his affirmance of [p]laintiff's Tier III Hearing disposition."); *see also McGriff*, No. 17-CV-7307, 2019 WL 6033421, at \*9 (S.D.N.Y. Nov. 13, 2019) (same); *Lebron*, 2017 WL 365493, at \*9 (finding that "qualified immunity attaches" because "not every reasonable official would understand that" "failure to correct a procedural due process violation on appeal violates an inmate's constitutional rights"). Accordingly, all claims for relief against Venettozzi are dismissed.

B. Plaintiff's Second Claim for Relief: Deliberate Indifference to Plaintiff's Medical Needs (Eighth Amendment)

Plaintiff alleges that Rossy violated his Eighth Amendment rights when she confiscated Plaintiff's back and knee braces. (Am. Compl. at 21-22). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104) (brackets omitted)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at \*4 (S.D.N.Y. Sept. 8, 2020).

> The first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain. . . . The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id*. \*4-5. (internal citations and quotation marks omitted). Plaintiff satisfies neither prong.

First, Plaintiff does not allege a "sufficiently serious" deprivation of medical care. *Id.* at *4. A "sufficiently serious" deprivation results in "more than minor discomfort or injury." *Cain v. Jackson*, No. 05-CV-3914, 2007 WL 2193997, at *5 (S.D.N.Y. July 27, 2007). To be "sufficiently serious," the deprivation must create a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Although Plaintiff apparently suffers from some degree of back and knee pain, he does not specify the conditions for which he was prescribed braces as treatment.[10] Notably, Plaintiff does not allege that he suffered any discomfort, let alone any "condition[s] of urgency," after his braces were confiscated. *Martin v. Mihalik*, No. 19-CV-7979, 2021 WL 1738458, at *8 (S.D.N.Y. May 3, 2021) (finding that plaintiff failed to allege objective prong of Eighth Amendment standard where plaintiff did not allege any harm as a result of alleged deprivation); *Sutton*, 2020 WL 5504312, at *5.

Second, Plaintiff does not allege that Rossy acted with a "sufficiently culpable state of mind" when she confiscated Plaintiff's back and knee braces. *Sutton*, 2020 WL 5504312, at *5. Plaintiff's own allegations show that Rossy confiscated these items not because she intended to

---

[10] The Court is skeptical that Plaintiff's knee problem would constitute a "serious medical need[]." *Chance*, 143 F.3d at 702; *see, e.g.*, *Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554, at *9 (S.D.N.Y. Sept. 23, 2020) (finding that plaintiff's "knee problem" did not constitute a "serious medical need"); *Taylor v. Kurtz*, No. 00-CV-700, 2004 WL 2414847, at *4 (W.D.N.Y. Oct. 28, 2004) ("Courts in this circuit . . . have often considered knee injuries and have consistently found that such injuries are insufficient to support a § 1983 claim based on deliberate indifference under the Eighth Amendment."); *Sharp v. Jeanty*, No. 93-CV-0220, 1993 WL 498095, at *2 (S.D.N.Y. Nov. 30, 1993) (finding that knee pain, which was repeatedly ignored and ultimately required surgery, does not alone "meet the Eighth Amendment standard"). As for Plaintiff's back pain, absent more detailed allegations regarding the associated medical issue, the Court is unable to opine on its severity. *See Mendoza v. McGinnis*, No. 05-CV-1124, 2008 WL 4239760, at *10 (N.D.N.Y. Sept. 11, 2008) ("The question of whether chronic back pain can rise to a level of constitutional significance is dependent upon the circumstances of the particular case presented.").

inflict pain, but rather, because Plaintiff's medical permit had expired.[11] (Am. Compl. ¶ 5). Further, Plaintiff does not allege that Rossy had any reason to believe that her actions would result in a "substantial risk [of] serious inmate harm." *Sutton*, 2020 WL 5504312, at *5. It follows, then, that Plaintiff's deliberate indifference claim against Rossy is dismissed. *See Aikens v. Rao*, No. 13-CV-1088S, 2015 WL 5919950, at *8 (W.D.N.Y. Oct. 9, 2015) (dismissing plaintiff's deliberate indifference claim arising from confiscation of back brace due to lack of permit).

    C. <u>Plaintiff's Third Claim for Relief: Conditions of Plaintiff's Confinement (Eighth Amendment)</u>

    Next, Plaintiff brings an Eighth Amendment conditions of confinement claim against Gutwein[12] in connection with the sanctions that he imposed following his determination that Plaintiff violated DOCCS's drug policy. (Am. Compl. ¶ 36). Specifically, Plaintiff alleges that the removal of his personal belongings from his cell following the guilty determination violated the Eighth Amendment. (*Id.*). To state an Eighth Amendment conditions of confinement claim, Plaintiff "must satisfy both an objective test and a subjective test." *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *8 (S.D.N.Y. Apr. 29, 2021) (quoting *Jolly v. Coughlin*, 76 F.3d

---

[11] Plaintiff does not allege that Rossy caused his back and knee braces to go missing from the H-Block. He merely alleges that she confiscated them. (Am. Compl. ¶ 5). That Plaintiff's braces ultimately went missing does not factor into the Court's analysis of Rossy's liability, as she is not alleged to have been personally involved in that incident. *See Boley*, 687 F. App'x at 41 (citing *Wright*, 21 F.3d at 501) ("To establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation."); *see also Alfaro Motors, Inc.*, 814 F.2d at 886 (quoting *Black*, 534 F.2d at 527-28) (failure to allege personal involvement renders a "complaint 'fatally defective' on its face").

[12] Plaintiff also brings this claim against Deegan, Dahl, and Royce. But, as discussed in § I.A.1., *supra*, all claims for relief against Royce are dismissed for lack of personal involvement. And none of Plaintiff's allegations involving Deegan and Dahl have anything to do with Plaintiff's conditions of confinement. The Eighth Amendment conditions of confinement claim for relief against Deegan, Dahl, and Royce is, therefore, dismissed. *See Boley*, 687 F. App'x at 41 (2d Cir. 2017) (citing *Wright*, 21 F.3d at 501) ("To establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation."); *see also Alfaro Motors, Inc.*, 814 F.2d at 886 (quoting *Black*, 534 F.2d at 527-28) (failure to allege personal involvement renders a "complaint 'fatally defective' on its face").

468, 480 (2d Cir. 2006)). "Under the first step of the analysis, conditions of confinement are objectively serious if the plaintiff can show that 'the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" *Id*. (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). "This assessment is not 'static,' as '[t]he conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id*. (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). "At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the plausible inference that the plaintiff was 'deprived of [his] basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety' or was 'exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health.'" *Id*. (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (internal quotation marks omitted)).

> As for the second step of the analysis, the subjective element, a defendant: cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (internal quotations omitted)); *see also Reyes v. Wenderlich*, 779 F. App'x 55, 56 (2d Cir. 2019) (noting that a plaintiff "must demonstrate that, subjectively, prison staff acted with deliberate indifference . . . in failing to address the purported danger" (internal quotation marks omitted)). Plaintiff satisfies neither test.

First, the temporary confiscation of personal belongings did not subject Plaintiff to "an unreasonable risk of serious damage to his health," and therefore, did not run afoul of the Eighth Amendment. *Schult*, 717 F.3d at 125. Courts in the Second Circuit have consistently expressed

this view. *See, e.g.*, *Dixon v. Goord*, 224 F. Supp. 2d 739, 748-49 (S.D.N.Y. 2002) ("[A]llegations of having been cut off from . . . personal property . . . are not violations of the Eighth Amendment."); *Myers v. City of N.Y.*, No. 11-CV-8525, 2012 WL 3776707, at *8 (S.D.N.Y. Aug. 29, 2012) ("[C]ourts are extremely reluctant . . . to find constitutional violations based on temporary deprivations of personal hygiene and grooming items." (citation omitted)); *Taylor v. Halladay*, No. 09-CV-0385, 2010 WL 3120036, at *8 (N.D.N.Y. July 1, 2010), *adopted by* 2010 WL 3155730 (N.D.N.Y. Aug. 9, 2010) (finding that failure to allow plaintiff to possess personal photographs did not violate the Eighth Amendment); *Johnson v. Coughlin*, No. 90-CV-1731, 1992 WL 6227, at *6 (S.D.N.Y. Jan. 3, 1992) (finding that denial of certain personal belongings and books did not violate the Eighth Amendment);

Further, although the temporary deprivation of clothing may constitute an Eighth Amendment violation under certain circumstances, it does not amount to one on these facts. *See Jean-Laurent v. Lawrence*, No. 12-CV-1502, 2013 WL 1129813, at *6 (S.D.N.Y. Mar. 19, 2013) ("Clothing is one of the necessities of civilized life, and while prisoners are not entitled to a daily change of clothes, at some point the denial of clean clothes could be a deprivation of constitutional magnitude." (quoting *Williams v. DeTella*, No. 95-CV-6498, 1997 WL 603884, at *2 (N.D. Ill. Sept. 23, 1997)). To amount to an Eighth Amendment violation, a plaintiff must allege that that the clothing deprivation "posed a threat to his health and safety." *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003). Plaintiff has not alleged such a threat here.

Second, Plaintiff does not allege that Gutwein "had a culpable state of mind" when he ordered the confiscation of Plaintiff's personal belongings. *Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *4 (S.D.N.Y. Feb. 17, 2015). Undoubtedly, Gutwein knew that the imposed sanctions would cause Plaintiff some degree of discomfort. But the deprivation of certain

privileges, including Plaintiff's possession and use of personal property, was merely a "normal incident[]" of disciplinary confinement. *Dixon*, 224 F. Supp. 2d at 748. Allegations that Gutwein imposed run-of-the-mill sanctions for Plaintiff's violation of DOCCS's drug policy, without more, does not evince his intent to subject Plaintiff to "a substantial risk of serious harm." *Gunn*, 2021 WL 1699949, at *9.

Accordingly, Plaintiff's conditions of confinement claim against Gutwein is dismissed.

D. <u>Plaintiff's Fourth Claim for Relief: Procedural Due Process Violations (Fourteenth Amendment)</u>

Plaintiff also brings a Fourteenth Amendment procedural due process claim against Gutwein and Rivera.[13] "[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Keesh*, 2021 WL 639530, at *7 (internal citations and quotation marks omitted, alternations in original). "A prisoner's liberty interest is implicated by prison disciplinary proceedings only if the discipline imposes 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Indeed, dismissal has been found appropriate where the period of confinement in relation to disciplinary hearings is shorter than 101 days." *Id.* (citing *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017)); *see also Barnes v. Storks*, No. 95-CV-4891, 1996 WL 648956, at *3 (S.D.N.Y. Nov. 6, 1996) (no protected liberty interest in inmate's twenty-one-

---

[13] Although both Deegan and Dahl served as witnesses at Plaintiff's disciplinary hearing, Plaintiff does not explain how their roles in the hearing contributed to its alleged procedural defects. Accordingly, Plaintiff fails to state Deegan and Dahl's personal involvement in the alleged procedural due process violations. The Fourteenth Amendment claim for relief against Deegan and Dahl is, therefore, dismissed. *See Boley*, 687 F. App'x at 41 (citing *Wright*, 21 F.3d at 501) ("To establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation."); *see also Alfaro Motors, Inc.*, 814 F.2d at 886 (quoting *Black*, 534 F.2d at 527-28) (failure to allege personal involvement renders a "complaint 'fatally defective' on its face").

day confinement in keeplock); *Camacho v. Keane*, No. 95-CV-0182, 1996 WL 204483, at \*2 (S.D.N.Y. Apr. 25, 1996) (no protected liberty interest in inmate's forty-day confinement in keeplock); *Schmelzer v. Norfleet*, 903 F. Supp. 632, 634 (S.D.N.Y. 1995) (no protected liberty interest in inmate's eleven-day confinement in keeplock).

Here, Plaintiff received sixty days' "keeplock" confinement. (Am. Compl. ¶ 35). This sanction does not amount to the type of "atypical and significant hardship" that would implicate a protected liberty interest. *Sandin*, 515 U.S. at 484; *Walker v. Caban*, No. 08-CV-3025, 2008 WL 4925204, at \*11 (S.D.N.Y. Nov. 19, 2008), *adopted by* 2008 WL 5148794 (S.D.N.Y. Dec. 5, 2008) (holding ninety days in solitary confinement did not implicate protected liberty interest). Nor does Plaintiff's ninety-day loss of certain privileges. (Am. Compl. ¶ 35); *Sandin*, 515 U.S. at 485 (holding that loss of commissary, recreation, package, and telephone privileges does not amount to an atypical and significant deprivation); *Boyd v. Doe #1*, No. 18-CV-1333, 2019 WL 5287973, at \*12 (N.D.N.Y. Oct. 18, 2019) (holding that alleged deprivation of personal property and other privileges for ninety days did not implicate protected liberty interest). Therefore, Plaintiff has failed to establish that he possessed a liberty interest.

Even if the Court assumes that Plaintiff possessed a liberty interest, Gutwein afforded him sufficient process. "Although a New York inmate has a due process right to call witnesses, that right is not absolute." *Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009) (internal citation omitted). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority . . . ." *Id.* (internal quotations omitted); *see also Scott v. Kelly*, 962 F.2d 145, 146 (2d Cir. 1992) ("It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable."). Further, "[t]he requirements of due process are satisfied if 'some evidence' supports

the conclusion of the disciplinary hearing." *Brooks v. Prack*, 77 F. Supp. 3d 301, 315 (W.D.N.Y. 2014).

At the disciplinary hearing, Gutwein afforded Plaintiff the opportunity to cross-examine the prosecuting witnesses against him (Deegan and Dahl). (Am. Compl. ¶¶ 27-30). Plaintiff was also provided with several of the documents that he requested. (*Id*. ¶ 18). Further, Plaintiff had the opportunity to question a representative of the company that manufactured the Indiko Plus machine. (*Id*. ¶ 32). Gutwein denied Plaintiff certain witnesses and documents; but he was merely exercising his "necessary discretion" in doing so. *Barnes*, 628 F. Supp. 2d at 411. And given Plaintiff's positive drug test and the witnesses' testimony against him, there was certainly "some evidence" to support Gutwein's guilty determination. *Brooks*, 77 F. Supp. 3d at 315. Therefore, Plaintiff's disciplinary hearing was well within the Fourteenth Amendment's guardrails.

Plaintiff also insists that Rivera's attempt to adjourn Plaintiff's disciplinary hearing constituted a procedural due process violation. (Am. Compl. at 24, ¶ 34). The gist of the allegation is that Rivera lied about Gutwein's availability in requesting that Plaintiff's hearing be adjourned to November 9, 2019. (*Id*. at 24). But in any event, Plaintiff's hearing occurred as scheduled on November 7, 2019. (*Id*.). And even assuming *arguendo* that Plaintiff's had a protected liberty interest, which he did not, Plaintiff fails to articulate how an adjournment request that was denied could have deprived him of sufficient process.

Accordingly, the procedural due process claims against Gutwein and Rivera are dismissed.

E. Plaintiff's Fifth Claim for Relief: Retaliation (First Amendment)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Handle v. Alexander*, No. 10-CV-9235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id.* (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[ ] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff alleges that, in retaliation for filing a grievance against Rossy, all Defendants[14] conspired to have Plaintiff's urine tested for drugs, which resulted in allegedly flawed disciplinary proceedings against him. (Am. Compl. at 22-25).[15]

Plaintiff undoubtedly engaged in protected conduct when he filed a grievance against Rossy. *See Davis*, 320 F.3d at 352-53 ("[T]he filing of prison grievances is a constitutionally protected activity."). But it is a closer call whether being subjected to a single urine test constitutes an adverse action. *Compare Holmes v. Fischer*, No. 09-CV-00829, 2016 WL 552962, at *10 (W.D.N.Y. Feb. 10, 2016) ("Insofar as urinalysis involves both embarrassment and potential punishment, being required to submit to a urinalysis constitutes an adverse action." (internal quotation marks and citations omitted)), *with Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("Urine tests are a fact of prison life, and I do not find that one urine test would chill a prisoner of ordinary firmness from filing grievances." (internal citations omitted)), *and Fann v. Arnold*, No. 14-CV-6187, 2016 WL 2858927, at *3 (W.D.N.Y. May 16, 2016) ("[T]he fact that Plaintiff was subjected to a single urine test does not constitute an adverse action that

---

[14] As Annucci, Royce, and Venettozzi are dismissed due to lack of personal involvement, *see supra*, § I.A.1., the retaliation and conspiracy claims only apply to Rossy, Gutwein, Rivera, Deegan, and Dahl.

[15] To the extent Plaintiff brings a § 1983 conspiracy claim, his "allegations do not provide a factual basis to support a claim that Defendants engaged in a conspiracy." *Jackson*, 2019 WL 6119010, at *11; *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (in the context of § 1983 conspiracy claim, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (internal quotation marks omitted)). Moreover, "any factual allegations that Defendants conspired together are legally insufficient, because the intracorporate immunity doctrine generally bars conspiracy claims against employees of the same entity." *Ortiz v. Ledbetter*, No. 19-CV-2493, 2020 WL 2614771, at *6 (S.D.N.Y. May 22, 2020). "And there is no suggestion here that any exception to the doctrine applies." *Id.* Lastly, "because there was no underlying violation, the conspiracy claim must fail." *Jackson*, 2019 WL 6119010, at *11; *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation."). Accordingly, Plaintiff's conspiracy claim against Rossy, Gutwein, Rivera, Deegan, and Dahl is dismissed.

would deter an inmate from asserting his or her rights."). The Court, however, need not and does not wade into this debate.

Even assuming, *arguendo*, that a single urine test constitutes an adverse action, Plaintiff fails to satisfy the third prong of the retaliation test. Namely, Plaintiff fails to allege "a causal connection" between his grievance against Rossy and his subsequent urine test. *Handle*, 2011 WL 1226228, at *2. "To sufficiently allege a causal connection, [Plaintiff's] allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). "Plaintiff need not provide direct evidence of a retaliatory motive to support a retaliation claim." *Hammock v. Pierce*, No. 15-CV-09052, 2018 WL 2108244, at *8 (S.D.N.Y. May 7, 2018) (citing *Bennett v. Goord*, 343 F.3d at 139). "Rather a retaliatory motive may be inferred from a number of circumstantial factors, including, *inter alia*, '(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter, and (iv) statements by the defendant concerning his motivation.'" *Id.* (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks omitted)).

Here, Plaintiff filed a grievance against Rossy on September 10, 2019. (Am. Compl. ¶ 9). Then, on October 11, 2019, Plaintiff was randomly selected for a urine test. (*Id.* ¶¶ 11-12). Although "the passage of approximately one month between the protected activity and the retaliation is a sufficiently short period of time," Plaintiff's allegations nonetheless fail to establish a causal link. *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011). Indeed, Plaintiff alleges that he was *randomly* selected for urine testing, i.e., he was selected by a computer, not Defendants. (Am. Compl. ¶¶ 12, 29). Further, Plaintiff does not allege that anyone other than

Rossy was aware of the grievance filed against her. *See Mateo v. Dawn*, No. 14-CV-2620, 2016 WL 5478431, at *8 (S.D.N.Y. Sept. 28, 2016) (finding no causation where plaintiff did not "allege or otherwise suggest that Defendants even knew of the complaints filed against other correction officers"); *see also Jackson v. Prack*, No. 16-CV-7561, 2019 WL 6119010, at *10 (S.D.N.Y. Nov. 18, 2019) (finding no causation where plaintiff did "not allege that either [d]efendant knew of the grievance"). Therefore, Plaintiff fails to establish any plausible connection between Plaintiff's protected activity and his subsequent selection for urine testing.

Accordingly, Plaintiff's retaliation claim against Rossy, Gutwein, Rivera, Deegan, and Dahl is dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's First, Third, Fourth, and Fifth Claims for Relief with prejudice, as any amendment would be futile. *See Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) ("District courts should frequently provide leave to amend before dismissing a pro se complaint. However, leave to amend is not necessary when it would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))).

The Court GRANTS Defendants' motion to dismiss Plaintiff's Second Claim for Relief without prejudice. Plaintiff may file a Second Amended Complaint, should he be so advised, within 30 days from the date of this Order to address only the Second Claim for Relief pleading deficiencies identified herein and for no other purpose. Plaintiff is reminded that if he chooses to file a Second Amended Complaint, the Second Amended Complaint will completely replace, not supplement, the original complaint. Therefore, any facts or claims that Plaintiff wishes to maintain

concerning the Second Claim for Relief and that were not herein dismissed with prejudice must be included in the Second Amended Complaint.

The Clerk is instructed to terminate the motion sequence pending at Doc. 61 and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated: White Plains, New York
        June 23, 2021

_____
Philip M. Halpern
United States District Judge